John P. LAWRENCE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–174C.

United States Court of Federal Claims.

Feb. 1, 2006.

Harry J. Jordan, Washington, DC, for Plaintiff.

Kelly B. Blank, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC; Robert T. Hoff, General Services Administration, Office of

General Counsel, Personal Property Division, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

WILLIAMS, Judge.

Plaintiff, John P. Lawrence, seeks to recover $53,761.07 deducted from his federal salary by the General Services Administration (GSA) due to GSA's erroneous overpayment of Plaintiff's Living Quarters Allowance (LQA). Plaintiff alleges that GSA's collection actions violate his Due Process rights and the Takings Clause of the United States Constitution. In addition, Plaintiff claims GSA breached his employment contract and effected an illegal exaction by deducting portions of his salary to satisfy his debt. Finally, Plaintiff alleges that GSA improperly denied Plaintiff's request for a waiver of his debt. Because Plaintiff has failed to state a claim for a taking or an illegal exaction and because the Court lacks jurisdiction over Plaintiff's remaining claims, this action is dismissed.

### Background [1]

Plaintiff accepted an offer from GSA to a post in Germany as a Transportation Operation Specialist with the agency's Fleet Division. On November 7, 1997, Plaintiff signed GSA's "Overseas Employment Transportation Agreement" under which he agreed to remain in GSA's service for 36 months following his arrival in Germany. Appendix to Defendant's Motion to Dismiss (Def.App.) at 1. He also agreed that if he left Government service prior to completing 12 months of service, he would be indebted to the Government for travel and transportation expenses incurred on his behalf unless he separated for reasons acceptable to GSA. *Id.*

As an overseas employee of GSA, Plaintiff was entitled to apply for LQA. 5 U.S.C. § 5923(a)(2). LQA is limited to actual, allowable costs for rent and utilities, or maximum rate for the post, whichever is less. Department of State Standardized Regulations (DSSR) § 134. On August 10, 2001, Plaintiff submitted a Standard Form (SF)1190 to GSA providing a record of his actual living expenses for the period from January 24, 1998 through January 16, 1999, and an SF 1190 for January 16, 1999 through July 1, 2001, respectively. Def.App. at 2–6, 7–13. Plaintiff represented that he incurred a total of $43,126.40 in actual living expenses during these periods. *Id.* at 5, 12.

On September 26, 2002, GSA notified Plaintiff that an audit of his payroll account revealed that he received $93,360.00 in LQA payments during the period from January 24, 1998 to July 1, 2001, when his actual expenses totaled $43,126.40, an overpayment of $53,233.60. Compl. ¶ 11; Def.App. at 14–15, 20. In addition, GSA noted another overpayment of $791.20. GSA had collected $263.73 of this latter overpayment, leaving a total of $53,761.07 outstanding. Def.App. at 15, 20. Plaintiff and his colleagues in Germany were informed that because of mismanagement and negligence by individuals overseeing the LQA program in Washington, D.C., they had received these payments in excess of those authorized by statute and were responsible for repaying the overpayments. Compl. ¶ 10. GSA also informed Plaintiff that unless he responded to its notice within 30 days, GSA planned to withhold 15 percent of Plaintiff's net disposable pay for each pay period (amounting to $237.33) for three years pursuant to 5 U.S.C. § 5514(a)(1).[2] *Id.* at 21.

---

1. The background is derived from Plaintiff's Complaint and the Appendix to Defendant's Motion to Dismiss.

2. 5 U.S.C. § 5514(a)(1) provides in pertinent part:

When the head of an agency or his designee determines that an employee ... is indebted to the United States for debts to which the United States is entitled to be repaid at the time of the determination by the head of an agency or his designee, ... the amount of indebtedness may be collected in monthly installments, or at officially established pay intervals, by deduction from the current pay account of the individual. The deductions may be made from basic pay, special pay, incentive pay, retired pay, retainer pay, or, in the case of an individual not entitled to basic pay, other authorized pay. The amount deducted for any period may not exceed 15 percent of disposable pay, except that a greater percentage may be deducted upon the written consent of the individual involved.

GSA also notified Plaintiff of his options for repayment as well as his rights to waiver, reconsideration, and a hearing before the payroll deductions commenced. *Id.* at 22–23.[3]

By a second letter dated September 26, 2002, GSA proposed to settle the LQA overpayment by accepting half the full amount owed, $26,880.53, with no interest, in full satisfaction of GSA's claim if Plaintiff agreed "not to seek reconsideration, a pre-offset hearing, [or a] waiver of the debt, and he agreed not to sue or file any appeal or claim in any forum against the United States, GSA, its officers, employees, agents, or designees, either officially or in their individual capacities, concerning the LQA payments." Compl. ¶ 12; Def.App. at 25. Plaintiff rejected this offer and requested a hearing. Compl. ¶ 12.

What Plaintiff characterizes as a "paper hearing" was held before the General Services Administration Board of Contract Appeals (GSBCA). *See In the Matter of John P. Lawrence,* GSBCA 15989–DBT (2003); Def.App. at 31–39. The GSBCA determined that Plaintiff owed a valid debt to GSA and that the proposed repayment schedule was supported by "good grounds." Def.App. at 39. The GSBCA also noted that Plaintiff retained the option to request a waiver of the debt from GSA. *Id.* at 34 n. 4.

On March 12, 2003, Plaintiff filed a request for waiver of the debt by GSA claiming that "he and the other Fleet Europe Division personnel were not at fault for the overpayments, [had] accepted the payments in good faith, and had no inkling that the payments were ... [not] in full compliance with the applicable LQA rules and regulations." Compl. ¶ 15. On June 11, 2003, GSA notified Plaintiff that his waiver request was denied. Def.App. at 40–41. The report of investigation accompanying GSA's denial explained:

> [O]ver a 3½ year period, Mr. Lawrence received a total of $53,761.07 in LQA over and above his actual expenses. This

equates to an average of $1,267.47 per month in excess of his actual expenses. Given the amount of money involved, the length of time over which payments were made, and the fact that he had no less than 17 opportunities to review the SF 1190,[4] it is reasonable to expect that Mr. Lawrence would have questioned the correctness of his LQA payments. The fact that he did not indicates that he is not without fault in creating the overpayment.

*Id.* at 43–44.

### Discussion

Plaintiff does not deny he was overpaid $53,761.07 and that he is indebted to GSA in that amount. Rather, he asserts a barrage of claims stemming from GSA's method of recouping the overpayment and GSA's refusal to waive his debt. Plaintiff lodges claims of Constitutional violations, illegal exaction, breach of contract and improper agency action, none of which survive Defendant's motion to dismiss.

### *The Due Process Clause, the Equal Protection Clause and the Statute Governing Waiver of Debt Are Not Money–Mandating.*

■ Subject matter jurisdiction may be challenged at any time by any parties, by the Court *sua sponte* and even on appeal. *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir. 1993). In ruling on a motion to dismiss for lack of subject-matter jurisdiction, the Court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir. 1993). Ultimately, however, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Taylor v. United States,* 303 F.3d 1357, 1359 (Fed. Cir.2002).

The Tucker Act both confers jurisdiction upon the United States Court of Federal

---

3. It appears from the record that GSA began withholding 15% of Plaintiff's net disposable pay in or about October 2002. *See* Def.App. 20–21, 46–47.

4. The report noted that Plaintiff had "received 17 SF 1190's between January 24, 1998 and July 1, 2001," which included entries for LQA, "spaces for the employee to fill in his payments in U.S. dollars and foreign currency." Def.App. at 43.

Claims (COFC) and waives sovereign immunity with respect to certain actions for monetary relief brought against the United States. *See United States v. Mitchell,* 463 U.S. 206, 212–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc). Under the Tucker Act, sovereign immunity is waived for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

However, the Tucker Act does not, by itself, "create any substantive right enforceable against the United States for money damages." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *see also Fisher,* 402 F.3d at 1172 ("[A] plaintiff must identify a separate source of substantive law that creates the right to money damages," *i.e.,* a source which is "money mandating").

The Federal Circuit, in *Fisher,* an en banc decision, clarified that the issue of whether a source is money-mandating is to be resolved in a single-step inquiry, not a two-step inquiry.[5] The Court explained:

> The single step would be one in which the trial court determines both the question of whether the statute provides the predicate for its jurisdiction, and lays to rest for purposes of the case before it the question of whether the statute on its merits provides a money-mandating remedy.

*Fisher,* 402 F.3d at 1173.

Plaintiff's claims of violation of his Due Process and Equal Protection rights[6] do not implicate a Constitutional provision which creates a right to the recovery of money damages. It is well established that the Due Process Clause of the Fifth Amendment does not obligate the Government to pay money damages. *Collins v. United States,* 67 F.3d 284, 288 (Fed.Cir.1995) (citations omitted); *see also LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir.1995) (Fifth Amendment Due Process Clause is not a sufficient basis for jurisdiction in the Court of Federal Claims because the Clause does not mandate payment of money by the government). Similarly, the Equal Protection Clause does not mandate payment of money. *LeBlanc,* 50 F.3d at 1028; *see also Mullenberg v. United States,* 857 F.2d 770, 773 (Fed.Cir. 1988); *Richards v. United States,* 20 Cl.Ct. 753, 757–58 (1990). As such, this Court lacks jurisdiction over Plaintiff's Due Process and Equal Protection claims.

Plaintiff also alleges that GSA's refusal to grant Plaintiff a waiver of his debt was arbitrary and capricious. Compl. ¶ 22. To the extent this claim seeks judicial review of an agency action, GSA's denial of a waiver, it is not within this Court's jurisdiction. This court has "no general federal question jurisdiction, *see* 28 U.S.C. § 1331, nor the right generally to review final agency action under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706." *Carroll v. United States,* 67 Fed.Cl. 82, 86 (2005).[7]

To the extent Plaintiff's challenge to GSA's refusal to grant a waiver can be characterized as a claim for money damages—repayment of Plaintiff's salary that was deducted to satisfy the debt—separate and apart from Plaintiff's illegal exaction claim, such claim does not derive from a money-mandating statute.[8] The statute authorizing

---

**5.** In so ruling, the Federal Circuit overruled *Gollehon Farming v. United States,* 207 F.3d 1373 (Fed.Cir.2000).

**6.** Plaintiff appears to argue that the Government violated the Equal Protection Clause by granting other similarly situated employees waivers of their debts due to LQA overpayments while denying him a waiver.

**7.** Furthermore, an agency's decision with respect to waiving an employee's debt is discretionary under 5 U.S.C. § 5584, and "it is an open ques-

tion whether an agency's denial of a discretionary award is reviewable at all." *Krug v. United States,* 168 F.3d 1307, 1310 (Fed.Cir.1999) (citing 5 U.S.C. § 701(a)(2)) (excluding from judicial review agency action "committed to agency discretion by law").

**8.** Plaintiff's illegal exaction claim purports to be based upon both the Fifth Amendment and 5 U.S.C. § 5584 and is discussed below. As a separate claim, Plaintiff appears to allege that the agency should have granted a waiver of his debt pursuant to Section 5584, necessarily result-

waiver by the agency, 5 U.S.C. § 5584, commits the decision whether to waive an employee's debt to the discretion of the agency and does not create the right to money damages. In *Fisher*, the Federal Circuit recapped the test articulated by the Supreme Court for determination of whether a statute is money-mandating for Tucker Act jurisdictional purposes as follows: "a statute ... is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" 402 F.3d at 1173.

Section 5584 of Title 5 provides in pertinent part:

§ 5584. **Claims for overpayment of pay and allowances, and of travel, transportation and relocation expenses and allowances**

(a) A claim of the United States against a person arising out of an erroneous payment of pay or allowances made ... to an employee of an agency, the collection of which would be against equity and good conscience and not in the best interests of the United States, *may* be waived in whole or in part by—

(1) the authorized official; [9]

(2) the head of the agency when—

(A) the claim is in an amount aggregating not more than $1,500; and

(B) the waiver is made in accordance with standards which the authorized official shall prescribe;

. . . .

(b) The authorized official or the head of the agency, as the case may be, may not exercise his authority under this section to waive any claim—

(1) if, in his opinion, there exists, in connection with the claim, an indication of

fraud, misrepresentation, fault, or lack of good faith on the part of the employee or any other person having an interest in obtaining a waiver of the claim;

By its terms Section 5584 provides that the agency official "may" waive a debt if its collection "would be against equity and good conscience and not in the best interests of the United States." 5 U.S.C. § 5584(a). As Judge Wolski recently recognized in *Contreras v. United States*, 64 Fed.Cl. 583, 592–93 (2005), a statute's use of the term "may" suggests that a statute is not money-mandating:

Because the provision does not use mandatory language, a very strong, but rebuttable, presumption arises that the [statutory] provision is non-money-mandating.

. . . .

The Federal Circuit has recently reiterated this canon of statutory interpretation:

We may thus presume that when Congress used the word "may" in the statute in suit, we should use common sense and presume that the word conveys some degree of discretion. But we must proceed to test that presumption against the intent of Congress and other inferences that we may rationally draw from the structure and purpose of the statute at hand.

*Id.* at 593 (citations omitted).

Here, the structure and purpose of the statute confirm the discretionary nature of a waiver decision. The only statutory limitations on the agency official's discretion are prohibitions against granting a waiver—"if, in his opinion, there exists ... an indication of fraud, misrepresentation, fault or lack of good faith on the part of the employee ... having an interest in obtaining a waiver ..." 5 U.S.C. § 5584(b)(1). Thus, rather than

---

ing in payment to him of the $53,761.07 deducted from his salary. This characterization of the claim would also warrant its dismissal under *Bowen v. Massachusetts*, 487 U.S. 879, 891–901, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (holding that monetary claims seeking specific relief in the form of money rather than money "damages" are to be pursued through the APA, not the Tucker Act).

9. The term "authorized official" is defined as: (1) the head of an agency, with respect to an agency or employee in the legislative branch; or (2) the Director of the Office of Management and Budget (OMB), with respect to any other agency or employee. 5 U.S.C. § 5584(g). Plaintiff's request for waiver was referred to GSA's Office of General Counsel (OGC) for final action and was denied by that office. It is unclear whether the waiver request was referred to OGC by the Administrator of GSA or by the Director of OMB.

commanding the official to pay money, the statute prohibits the official from forgiving a debt if any enumerated conditions have been met "in his opinion." If those bars to waiver—fraud, misrepresentation, fault or lack of good faith—are not present, the statute does not mandate waiver of the debt—waiver is a matter left to the discretion of the official. As such, 5 U.S.C. § 5584 cannot be fairly interpreted as mandating payment of money and cannot form the basis of this Court's Tucker Act jurisdiction. *White Mountain*, 537 U.S. at 472–73, 123 S.Ct. 1126; *Fisher*, 402 F.3d at 1174; *cf. District of Columbia v. United States*, 67 Fed.Cl. 292, 305 (2005) (finding Transfer Act's "is directed-to-pay" language to be money-mandating).

### Breach of Contract

■ In the alternative, Plaintiff claims this Court has jurisdiction over this action because GSA breached a three-year employment contract with him. Plaintiff's Opposition to Defendant's Motion to Dismiss (Pl. Opp.) at 11. However, there is a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed.Cir.1995) (quoting *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir.1985)); *see also Bigler v. United States*, 230 Ct.Cl. 985, 986, 1982 WL 25297 (1982) ("public employment is presumptively not by contract; it is instead accomplished by appointment and controlled by statute, regulation, and Executive Order" (citations omitted)). As the Federal Circuit explained in *Hamlet*:

> [U]nder the Tucker Act, "if Hamlet's employment was by 'appointment,' a breach of contract action against the government would be precluded." *CAFC Hamlet I*, 873 F.2d at 1417 n. 5 (citing *Hopkins*, 427 U.S. at 128, 96 S.Ct. at 2511–12; *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 738, 102 S.Ct. 2118, 72 L.Ed.2d 520 ... (1982)). In *Sheehan*, the Supreme Court examined the record and the relevant agency regulations and concluded that the respondent in that case was employed by appointment, rather than by contract, and, thus, the Tucker Act did not confer jurisdiction over the respondent's contract claim against the United States for money damages. *Sheehan*, 456 U.S. at 735–37, 102 S.Ct. 2118.

63 F.3d at 1101.

Here, as in *Sheehan*, Plaintiff is employed by appointment, not contract, as he is admittedly an appointed employee of GSA. The agency's October 16, 1997 letter to Plaintiff states "[t]his letter is to confirm your appointment to be effective November 9, 1997." Appendix to Pl. Opp. (Pl.App.) at 2. The letter also describes the conditions and benefits of Plaintiff's appointment, including the necessity of signing an "appointment affidavit" and taking an Oath of Office. *Id.*

Plaintiff's Overseas Employment Transportation Agreement (OETA) is not an employment contract. By signing the OETA, Plaintiff agreed to "remain in the service of the [GSA] for a period of 36 months from time of arrival" in Germany. Def.App. at 1. If he left government service "prior to completing 12 months of service after [his] appointment or transfer to the overseas post," he would be indebted to the United States for the cost of his travel and relocation expenses. *Id.* This agreement by its terms does not confer employment but merely conditions his receipt of travel and relocation expenses on his remaining in the service of the government for a set time.

Because Plaintiff was employed by appointment, not contract, this Court lacks jurisdiction to entertain his claim for breach of an employment contract under the Tucker Act. *See Hamlet*, 63 F.3d at 1101–02; *see also Boston v. United States*, 43 Fed.Cl. 220, 225 (1999) (citations omitted) (Although the Court of Federal Claims "generally possesses subject matter jurisdiction over contracts implied-in-fact, such is not the case for claims asserted by federal employees who are employed pursuant to appointment, rather than by virtue of an employment contract").

### Exaction Claim

■ Plaintiff maintains this Court has jurisdiction over this action because the Government effected an illegal exaction by with-

holding LQA overpayments from his salary "in violation of the Fifth Amendment [and] the waiver provisions of 5 U.S.C. § 5584." Pl. Opp. at 11. "An illegal exaction . . . exists only if money has been 'improperly exacted or retained' by the government." *Bank One, Michigan v. United States,* 62 Fed.Cl. 474, 480 (2004) (citing *Casa de Cambio Comdiv v. United States,* 291 F.3d 1356, 1363 (Fed.Cir.2002) (citations omitted)); *see also Clapp v. United States,* 127 Ct.Cl. 505, 512, 117 F.Supp. 576 (1954) (an illegal exaction occurs when "the Government has the citizen's money in its pocket"). In order to maintain a claim for illegal exaction, Plaintiff must allege he " 'paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.' " *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1572–73 (Fed.Cir.1996) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002 (1967)). A suit to recover illegally exacted money can be maintained under the Tucker Act so long as the exaction is based on an asserted statutory power. *Id.*

■ Although this Court could entertain a properly pleaded illegal exaction claim, Plaintiff has failed to state such a claim here. The offset Plaintiff is challenging would be an illegal exaction only if Plaintiff were "not a debtor to the United States in the amount of the offset." *Bank One,* 62 Fed.Cl. at 480. Plaintiff does not contest that he was overpaid LQA, and he has acknowledged that his debt is due and owing. *See* Pl. Opp. at 12–15. He only challenges the manner in which the Government chose to collect the debt and the Government's decision not to waive the debt. Because Plaintiff has failed to allege the necessary elements of an illegal exaction claim, this claim is dismissed pursuant to RCFC 12(b)(6).[10]

### Takings Claim

■ Although this Court has jurisdiction over an alleged Takings claim, Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff has no property interest in keeping erroneous payments to which he is not entitled. The Government clearly has the authority to recoup funds that it erroneously paid and is not estopped from doing so by the mistakes of its officers or agents. *Aetna Cas. & Sur. Co. v. United States,* 208 Ct.Cl. 515, 520, 526 F.2d 1127 (1975); *Bank One,* 62 Fed.Cl. at 480 (government has the right to initiate offsets against its debtors).

It is well established that "the mere imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment." *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1340 (Fed.Cir.2001) (en banc). As such, Plaintiff's taking claim is dismissed pursuant to RCFC 12(b)(6).

### Conclusion

1. Plaintiff's claims alleging Due Process and Equal Protection violations, arbitrary and capricious conduct in failing to waive the debt, and breach of contract are dismissed pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction.

2. Plaintiff's illegal exaction and Fifth Amendment taking claims are dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted.

The Clerk is directed to dismiss this action, no costs.

---

**10.** Although Plaintiff also alleged in his Complaint that "the set-offs violated, and continue to violate, the Debt Collection Improvement Act of 1996, 31 U.S.C. §§ 3701 and 3716 and the Federal Claims Collection Standards provisions set forth in 31 C.F.R. §§ 900–904," he has not pursued these allegations in his motion papers. Compl. ¶ 22. Plaintiff has alleged no facts supporting a violation of these statutes and these allegations, if pursued, would also be subject to dismissal under RCFC 12(b)(6).